IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

NORTH AMERICAN OLIVE OIL         :
ASSOCIATION,                             :
                                   :
      Plaintiff,                  :
                                   :     CIVIL ACTION
v.                                 :     NO. 16-cv-06986
                                   :
D'AVOLIO INC., O LIVE BROOKLYN    :
LLC, THE CRUSHED OLIVE OF       :
BABYLON, INC., THE CRUSHED OLIVE :
OF HUNTINGTON, INC., THE CRUSHED :
OLIVE OF SAYVILLE, INC., THE      :
CRUSHED OLIVE OF STONYBROOK,  :
INC., THE CRUSHED OLIVE OF       :
WADING RIVER, INC. and VERONICA :
FOODS COMPANY,                 :
                                   :
      Defendants.              :

_____

## COMPLAINT AND JURY DEMAND

Plaintiff North American Olive Oil Association ("Plaintiff" or the "NAOOA") files this Complaint against Defendants D'Avolio Inc., O Live Brooklyn LLC, The Crushed Olive of Babylon, Inc., The Crushed Olive of Huntington, Inc., The Crushed Olive of Sayville, Inc., The Crushed Olive of Stonybrook, Inc., The Crushed Olive of Wading River, Inc., and Veronica Foods Company (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for product disparagement, false advertising, deceptive acts and practices, injury to business reputation, defamation and unfair competition under the Federal Trademark Act of 1946, as amended, 15 U.S.C. §§1051 et seq. (the "Lanham Act"), as well as New York statutory and common law.

## PARTIES

2.      The NAOOA is a trade association of marketers, packagers, producers and importers of olive oil for sale in the United States and Canada. Based in New Jersey, the NAOOA was established in 1989 to foster a better understanding of olive oil and its taste, versatility, and health benefits, and to ensure that olive oil sold in North America adheres to internationally recognized guidelines.  NAOOA members pledge to abide by the standards recognized world-wide for olive oil quality and purity established by the International Olive Council (IOC), and the NAOOA offers a Certified Quality Seal Program to indicate compliance with global trade standards for quality and purity.[1]  They also contribute substantial time and funding to educate consumers about olive oil and its health benefits. NAOOA members compete directly with Defendants and have been injured by (a) Defendants' disparaging statements about the NAOOA, its Certified Quality Seal Program, and olive oil sold in supermarkets, including the NAOOA members' olive oil products, (b) Defendants' false and misleading commercial practices in connection with the promotion and sale of Defendants' own olive oil products; and (c) Defendants' overall engagement in unlawful competition.

3.      Upon information and belief, Defendant D'Avolio Inc., is a domestic corporation with a principal place of business located at 5409 Main Street, Williamsville, New York.

4.      Upon information and belief, Defendant O Live Brooklyn, is a domestic limited liability company with a principal place of business located at 140 5th Avenue, Brooklyn, New York.

---

[1] NAOOA is a division of the Association of Food Industries, Inc. which is a not-for-profit corporation organized in New Jersey.

5.     Upon information and belief, Defendant The Crushed Olive of Babylon, Inc., is a domestic corporation with a principal place of business located at 16 W. Main Street, Babylon, New York.

6.     Upon information and belief, Defendant The Crushed Olive of Huntington, Inc., is a domestic corporation with a principal place of business located at 278 Main Street Huntington, New York.

7.     Upon information and belief, Defendant The Crushed Olive of Sayville, Inc., is a domestic corporation with a principal place of business located at 31A Main Street Sayville, New York.

8.     Upon information and belief, Defendant The Crushed Olive of Stonybrook, Inc., is a domestic corporation with a principal place of business located at 133 Main Street, Stony Brook, New York.

9.     Upon information and belief, Defendant The Crushed Olive of Wading River, Inc., is a domestic corporation with a principal place of business located at 5768 Route 25A, Suite T, Wading River, New York.

10.     The Crushed Olive of Babylon, Inc., The Crushed Olive of Huntington, Inc., The Crushed Olive of Sayville, Inc., The Crushed Olive of Stonybrook, Inc., and The Crushed Olive of Wading River, Inc., are collectively referred to as "The Crushed Olive."  The Crushed Olive, D'Avolio Inc. and O Live Brooklyn are sometimes referred to herein collectively as the "Retail Defendants."

11.     Upon information and belief, Defendant Veronica Foods Company ("VFC") is a foreign company with a principal place of business located at 1991 Dennison Street, Oakland, California.  VFC conducts business in the State of New York.

## JURISDICTION AND VENUE

12.   This is an action in which Plaintiff seeks economic and injunctive relief from Defendants arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, New York statutory and common law.  Defendants' unlawful acts have irreparably harmed the goodwill and reputation of Plaintiff and its members, and caused them significant damages and harm.

13.   This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §1331, and 28 U.S.C. § 1338(a), as this action involves federal questions regarding the Defendants' violations of federal law, specifically the Lanham Act.  In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to claims arising under state law which are so related to the federal claims brought herein as to form part of the same case or controversy.

14.   Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

15.   Olive oil comes from the fruit of the olive tree *(Olea europaea* L.), a species native to the Mediterranean basin. Olive tree cultivation was first documented as far back as 4,000 B.C., in parts of what is now Syria and Iran. By the time of the Roman Empire, olive oil had become a staple of Mediterranean trade. Although olive production has, in recent years, spread to Australia, South Africa, Chile, Argentina, and the United States, the large majority of the world's olive oil continues to be produced in the Mediterranean basin.

16.   Since ancient times, there has been a widespread recognition of olive oil's substantial and beneficial effects on human health. Olive oil contains monounsaturated fatty acids, which leading health care professionals consider a "healthy dietary fat" that can

lower bad LDL cholesterol and raise good HDL cholesterol. For this reason, the United

States Food and Drug Administration ("FDA") approved a qualified heart health claim for

olive oil in 2004 that was based on more than 70 clinical intervention studies conducted in

a number of countries. A diet with olive oil as a main source of fat has been linked to

health benefits favorably affecting susceptibility to cardiovascular disease, diabetes, stroke,

cancer, and more. Evidence shows that olive oil helps the body absorb beneficial nutrients

from vegetables and other healthy ingredients in meals. Olive oil also is an excellent source

of vitamins E and K.

17.     Consumers use olive oil in many ways. Many add olive oil to salad dressings,

marinades, baked goods, sauces, and pastas. In addition, olive oil's high amount of

monounsaturated fat makes it one of the most stable fats for cooking and frying, and, unlike

some other oils, many of its healthful qualities persist after heating.

18.     Given the many health benefits and culinary uses of olive oils, it is no surprise

that the market for olive oil has grown enormously over the last several decades. With

broader consumer recognition of olive oil's considerable health benefits, consumption in

the United States seems poised to continue to increase for years to come.

**Plaintiff's Market Presence**

19.     Many of the olive oil brands associated with the NAOOA and its members have

long been recognized as the leading olive oil brands in the U.S. and Canadian olive oil retail

market.  Those brands are sold throughout the United States in supermarkets, specialty food

stores and by wholesalers.

20.     As of 2015, NAOOA members account for approximately 55-60% of the total olive

oil sales in the United States.

21.     Through its efforts and investment, the NAOOA has developed an excellent reputation in the United States and Canadian marketplace for promoting and monitoring quality and purity standards for olive oil producers and sellers.  One of its key initiatives has been to promote the well-recognized health benefits connected with olive oil consumption and use.

**Misleading Marketing Campaign led by Veronica Foods**

22.     Upon information and belief, Retail Defendants are specialty retail sellers of olive oil produced and distributed by Defendant VFC.  As described herein, in their efforts to promote their VFC products, Retail Defendants, in concert with Defendant VFC, have engaged in a false and misleading advertising campaign and published false and misleading statements about the quality and health benefits of the olive oil sold in supermarkets and elsewhere, including products sold by NAOOA members.  Defendants have also targeted the NAOOA itself by publishing disparaging statements attacking the NAOOA's reputation as an industry leader in providing quality and purity standards for olive oil in the United States.

23.     It has recently come to the attention of Plaintiff that Defendants are engaged in a targeted and concerted effort to attack the NAOOA and its members' olive oil products sold in supermarkets.  The central focus of Defendants' campaign has been on an alleged lack of health benefits associated with the consumption of olive oils sold in supermarkets including NAOOA members' olive oil products.  This effort has been made at the retail store level through online statements, articles and promotional pieces.

24.     A similar effort has been undertaken by Defendant VFC at the production level through VFC's introduction of an alleged new premium standard for olive oil, which despite Defendants' claims, is nothing more than a marketing effort by VFC to deceive olive oil purchasers in New York and throughout the United States into believing that the only way to

ensure the purchase of olive oil with health benefits is to look for VFC's own proprietary seal of approval.

25.     Specifically, according to Defendants' various websites and statements, Defendants promote and advertise VFC olive oils under the "Ultra Premium" ("UP") designation. According to the URL www.upoliveoil.com, UP is a new category of olive oil created by VFC, which purportedly represents the highest quality olive oil in the world.  Upon information and belief, VFC's UP standard is evaluated at the crushing stage and does not necessarily reflect the product at the time of purchase by the consumer.  Those who are permitted to sell olive oil under the UP designation and seal (meaning VFC and its licensees) describe it as the highest quality standard in the world.

26.     The designation for VFC's UP standard is set forth below:



27.     VFC received federal trademark registration no. 4,300,768 from the United States Patent and Trademark Office ("USPTO") for the word mark "UP ULTRA PREMIUM EXTRA VIRGIN OLIVE OIL CERTIFIED LAB TESTED SENSORY EVALUATED HIGHEST STANDARD" and the design depicted above.

28.     Although VFC touts its UP designation and seal as a "certification" of the "highest standard," the UP trademark is not registered with the USPTO as a certification mark, rather, the mark is registered for commercial use.  And despite Defendants' attempts to suggest to

7

consumers that UP reflects a "certification" of the "highest standard", there is no third party that certifies the quality of the olive oils that bear the UP designation.

29. The reality is that Defendant VFC's UP mark and seal is a self-created designation used exclusively by VFC and its retailers to sell VFC olive oil. Thus, the use of the UP designation itself is false and misleading in that consumers are led to believe that the olive oil was certified, sponsored or approved by an third party.

30. For example, VFC's website touts that "[t]he UP standard is reserved for the finest extra virgin olive oils in the world, as such, the UP grade exceeds all existing European, Italian, Spanish, Greek, North American, Californian, or any other standard for the grade known as extra virgin olive oil. In order to qualify for the UP grade, the extra virgin olive oil must meet or exceed a comprehensive set of Production, Storage, Transportation, Testing, Chemistry, and Organoleptic requirements [created by VFC]." But in reality, the UP standard and seal is reserved only for VFC olive oils and cannot, pursuant to VFC's federal trademark rights, be used by any other producer or seller, even if that producer's products meet or exceed the parameters of VFC's UP standard.

31. Furthermore, through Defendants' marketing of their olive oils, numerous statements have been made by Defendants that mislead consumers into falsely believing that the recognized health benefits of olive oil can only be achieved by consuming olive oil bearing VFC's UP standard and certification. What Defendants fail to state to the consumer is that the UP designation and so-called "highest standard" cannot be displayed on the packaging of any other producer of olive oil regardless of that olive oil's quality, because that alleged standard and seal is the intellectual property of Defendant VFC and its licensees.

32.    While falsely and misleadingly marketing their own VFC olive oils under their new "highest standard", Defendants' advertising campaign has also targeted their largest competitors in the market, primarily the imported olive oil products sold in supermarkets, and specifically the brands sold by NAOOA members.  Defendants have engaged in a concerted effort to disparage these olive oils by claiming that these imported olive oils lack the health benefits associated with the consumption of olive oil.

33.    On information and belief, VFC provides the retailers that it supplies with marketing materials and other information containing false and disparaging information that its retailers repeat and/or use as a basis for similar statements in promoting the VFC products that they sell.  At the same time, the retailers use such statements to target imported olive oil products sold in supermarkets, and specifically the brands sold by NAOOA members.

34.    VFC's website states that "Over 50% of the oil produced in the Mediterranean area is of such poor quality that it must be refined to produce an edible product."  However, no support is offered for this false and misleading statement.

35.    Defendant D'Avolio, a retailer of VFC's olive oil, has particularly targeted brands sold in supermarkets, where NAOOA members' brands are primarily sold.  In promoting its own UP certified olive oils (purchased from VFC), D'Avolio distorts findings of an alleged industry report to represent to consumers that various brands sold in supermarkets hold no health benefits. For example, D'Avolio's website states:

> As one of many examples of how organic is not necessarily synonymous with quality, health benefit, or authenticity, we will refer you to the 2010 UC Davis Study which examined numerous supermarket brands, including a very popular private label: Newman's Own Certified Organic "Extra Virgin Olive Oil".  It, along with 70% of the other brands pulled and tested, failed to qualify chemically as Extra Virgin Olive Oil and was so old as indicated by its DAG score, **to hold no health benefit**.  This study not only demonstrated that extra virgin olive oil is

a term that is often misused, but also that the organic certification process does not take in to account quality, authenticity, or health benefit.

See, http://www.davolios.com/health/up_olive-oil.html.

36.   Furthermore, D'Avolio mischaracterizes statements in the UC Davis report by stating, without support, that "75-80% of what you're getting is not what they say on the label." Dan of D'Avolio in WIAT http://wiat.com/2016/01/06/report-links-imported-olive-oil-to-the-mafia/.

37.   These statements are false and misleading because they mischaracterize the UC Davis Study and falsely state that there is no health benefit associated with majority of olive oils on supermarket shelves.

38.   Additionally, the owner of Defendant O Live Brooklyn stated in an interview filed in Olive Oil World that: "The biggest misconception is that you can't cook with olive oil. This is what everybody says. Some people think it's just used for salad. It's a big misnomer. The reason is that if you're buying olive oil from a supermarket, it might not be real olive oil, or it might be old. In this case, it's lost all of the goodness and freshness in it."  Again, Defendants falsely suggest that there is nothing "good" about the supermarket olive oils and that they might not be real.

39.   The owner of O Live Brooklyn also stated in an interview that can be found at https://www.outsideonline.com/2062451/how-eat-better-life-hacking-special to "avoid major brands. Those bottles have been sitting around on shelves for God knows how long," suggesting that those olive oils have lost their quality and health benefits.

40.   The marketing campaign of VFC and its retailers is directly targeting the NAOOA and its members' brands.  Indeed, Defendant The Crushed Olive's website states that "[t]he market has become flooded with these oils that are regulated by absurdly low standards and

10

fostered by numerous trade associations that sacrifice quality for price."

http://thecrushedolive.com/ultra-premium.  The reference to trade associations can only be to the NAOOA, which is widely recognized as the leading olive oil trade association in North America.

41.    The foregoing statements are those directly attributable to the Defendants in this action.  Other retailers of VFC's olive oil products have made similar statements in their advertising demonstrating a widespread campaign by VFC to promote a message that is deliberately misleading to the public.  And VFC has seen significant financial success in its efforts to promote its products over supermarket oils.  On information and belief, VFC has experienced vast increases in its sales in recent years, and is now offering its products in substantially more retail locations.

42.    Many of the misleading statements made by VFC's retailers, based in whole or in part on information provided to them by VFC, include that supermarket olive oils "hold no health benefit," are "not as fresh" or that UP olive oils are the "freshest and finest" and are healthier than non-UP olive oils.

43.    Further, Defendants' contentions that the only way that consumers can ensure that they are receiving the health benefits associated with olive oil consumption is by purchasing UP certified olive oil is also false and misleading.  The use of the UP seal is restricted to VFC and its licensees pursuant to its federal trademark rights, so no other producer can use that designation and seal on their products.  Defendants' conduct in this regard is extremely misleading, because upon information and belief, there are numerous olive oils that are sold by producers other than VFC (including brands sold by NAOOA members) that meet VFC's UP standard.  Defendants' statements suggesting consumers can ensure quality and health benefits only by purchasing UP certified oils are blatantly false and represent deceptive business practices.  And at the same

time, Defendants have attempted to discredit the NAOOA as an industry leader in upholding quality and purity standards.

44.    The use of the UP designation as well as the advertisements, statements made to the media and to the public, published articles posted to Defendants' website and other referenced representations are likely to mislead, or have misled, consumers about the nature, qualities, and characteristics of imported olive oils sold in supermarkets including the NAOOA members' products.  Furthermore, these statements are likely to cause, or have caused, consumers to believe that: 1) the olive oils purchased in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) olive oils purchased in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that labels of olive oils purchased in supermarkets including the NAOOA members' products contain false or misleading information.

45.    As a result of Defendants' unlawful acts and statements, Plaintiff and its members have suffered and will continue to suffer damage including damage to their reputation, business and goodwill.

## COUNT I

### Violation of Section 43(a) of the Lanham Act

46.    Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

47.    Section 43(a) of the federal Lanham Trademark Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or — (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C.A. § 1125(a).

48.    Defendants' conduct, described above, in making false, disparaging and misleading statements about olive oils sold in supermarkets including the NAOOA members' products, constitutes product disparagement and false advertising.  Further, Defendants' false and misleading statements and marketing efforts made in connection with the promotion of their own products also constitutes false advertising and unfair business practices.  The advertisements, statements made to the media and to the public, published articles posted to Defendants' websites and other referenced representations are likely to mislead, or have misled, consumers about the nature, qualities, and characteristics of olive oils sold in supermarkets including the NAOOA members' products and Defendants' own products.

49.    Defendants' statements and commercial efforts are likely to cause, or have caused, consumers to believe that: 1) olive oils sold in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) olive oils sold in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold

quality and purity standards for olive oil; and/or 5) that labels of the olive oils sold in supermarkets including the NAOOA members' products contain false or misleading information.

50.   Further, Defendants' use of the UP certification and seal is also likely to cause, or has caused, consumers to believe that Defendants' olive oil products are sponsored or approved by a third party, when in reality, the UP certification and seal is nothing more than a commercial and promotional tool to advertise and sell Defendant VFC's own olive oil products.

51.   Defendants' actions were committed willfully, knowingly, maliciously, recklessly and in conscious disregard of Plaintiff's legal rights and constitute unfair competition under the Lanham Act.

52.   Due to Defendants' unlawful acts and statements, Plaintiff and its members have suffered and will continue to suffer damage including damage to their reputation, business and goodwill.

53.   Plaintiff has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

54.   Due to Defendants' violations of the Lanham Act, Plaintiff is entitled to injunctive relief, actual, compensatory and punitive damages in an amount to be determined at trial, disgorgement of Defendants' profits, attorneys' fees, costs and disbursements.

## COUNT II

### Unfair Competition Claim under New York Law

55.   Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

56.     Defendants' false and misleading statements constitute, and unless enjoined will continue to constitute, common law unfair competition, in violation of New York law.

57.     The misrepresentations by Defendants were made with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing that: 1) olive oils sold in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) olive oils sold in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that the labels of olive oils sold in supermarkets including the NAOOA members' products contain false or misleading information.

58.     Upon information and belief, the aforementioned misrepresentations and misleading statements by Defendants have been willful and knowing.

59.     Plaintiff has been harmed and will continue to be harmed by Defendants' unlawful conduct.

60.     Plaintiff has no adequate remedy at law.

61.     Plaintiff has suffered damages proximately caused by the false and misleading statements made by Defendants and is entitled to injunctive relief, actual, compensatory and punitive damages in an amount to be determined at trial, disgorgement of Defendants' profits, attorneys' fees, costs and disbursements.

## COUNT III

**Deceptive Acts and Practices in Violation of New York
General Business Law §§349 and 350**

62.    Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

63.    Defendants have made false and misleading statements about the NAOOA, its Certified Quality Seal Program and the nature, qualities and characteristics of olive oils sold in supermarkets including the NAOOA members' products.

64.    The aforementioned false and misleading statements were consumer oriented and have caused, and will continue to cause, harm to the trade and public at large.

65.    The aforementioned misrepresentations by Defendants were made with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing that: 1) olive oils sold in supermarkets including the NAOOA members' products  lack health benefits traditionally associated with olive oil products; 2) olive oils sold in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that the labels on olive oils sold in supermarkets including the NAOOA members' products contain false or misleading information.

66.    The nature, qualities and characteristics of the olive oil products offered for sale are material to the purchasing public.

67.    Upon information and belief, the aforementioned misrepresentations and misleading statements by Defendants have been willful and knowing and constitute wrongful conduct under N.Y.G.B.L. §§349 and 350.

68.    Plaintiff has been harmed and, unless Defendants are restrained, will continue to be harmed by Defendants' deceptive acts and practices.

69.    Plaintiff has no adequate remedy at law.

70.    Plaintiff has suffered damages proximately caused by the false and misleading statements made by Defendants and is entitled to injunctive relief, actual, compensatory and punitive damages in an amount to be determined at trial, disgorgement of Defendants' profits, attorneys' fees, costs and disbursements.

## COUNT IV

### Product Disparagement/Trade Libel

71.    Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

72.    Defendants have published oral and written statements regarding the NAOOA, its Certified Quality Seal Program and the nature, quality and characteristics of olive oils sold in supermarkets including the NAOOA members' products, including, without limitation that: 1) the olive oils sold in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) the olive oils sold in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity

standards for olive oil; and/or 5) that the labels on olive oils sold in supermarkets including the NAOOA members' products contain false or misleading information.

73.     As a result of the aforementioned defamatory statements, supermarket customers are distrustful of olive oils sold in supermarkets including the NAOOA members' products resulting in lost sales due to the customers' belief that Defendants' statements are true.

74.     Through these actions, Defendants have disparaged the Certified Quality Seal Program, the olive oils sold in supermarkets including the NAOOA members' products and the business reputation of the NAOOA and its members.

75.     Defendants' statements are defamatory *per se*.

76.     Upon information and belief, the aforementioned misrepresentations and misleading statements by Defendants have been willful and knowing.

77.     As a result of Defendants' conduct, Plaintiff has suffered damages, including special damages, as a proximate cause of the false and misleading statements made by Defendants and is entitled to injunctive relief, actual, compensatory and punitive damages in an amount to be determined at trial, disgorgement of Defendants' profits, attorneys' fees, costs and disbursements.

## COUNT V

### Defamation/Slander

78.     Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

79.     Defendants have published oral and written statements regarding the NAOOA, the Certified Quality Seal Program and the nature, quality and characteristics of Plaintiff's members' products, including, without limitation that: 1) the olive oils sold in supermarkets

including the NAOOA members' products  lack health benefits traditionally associated with

olive oil products; 2) the olive oils sold in supermarkets including the NAOOA members'

products are inferior to Defendants' UP-designated products; 3) the only way for consumers to

ensure that they are receiving the health benefits from their olive oil purchases is by purchasing

products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable

trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that the

labels of olive oils sold in supermarkets including the NAOOA members' products contain false

or misleading information.

80.     As a result of the aforementioned defamatory statements, supermarket customers

are distrustful of olive oils sold in supermarkets including the NAOOA members' products

resulting in lost sales due to the customers' belief that Defendants statements are true.

81.     Through these actions, Defendants have disparaged the Certified Quality Seal

Program, the olive oils sold in supermarkets including the NAOOA members' products and the

business reputation of the NAOOA and its members.

82.     Defendants' statements are defamatory *per se*.

83.     Upon information and belief, the aforementioned misrepresentations and

misleading statements by Defendants have been willful and knowing.

84.     As a result of Defendants' conduct, Plaintiff has suffered damages, including

special damages, as a proximate cause of the false and misleading statements made by

Defendants and is entitled to injunctive relief, actual, compensatory and punitive damages in an

amount to be determined at trial, disgorgement of Defendants' profits, attorneys' fees, costs and

disbursements.

## COUNT VI

### Cancellation of VFC's Trademark Registration

85.     Plaintiff repeats the foregoing allegations as though same were set forth at length herein.

86.     This Court has the authority to determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify registrations of any party to this action pursuant to Section 37 of the Lanham Act, 15 U.S.C. §§ 1119 *et seq.*

87.     On or about March 12, 2013, defendant VFC received registered trademark no. 4,300,768 from the United States Patent and Trademark Office for the Ultra-Premium word mark and design.

88.     VFC's use of the trademark is false and misleading because VFC and its retailers use this mark to represent to the public that the olive oil which met this standard is "certified." However, the trademark was not registered as a certification mark and documentation necessary for registration as a certification mark was not submitted to the USPTO.

89.     The foregoing facts justify cancellation of the registration of Veronica Foods' UP trademark, pursuant to Section 37 of the Lanham Act, 15 U.S.C. §§ 1119 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.      A preliminary and permanent injunction restraining the Defendants, their respective officers, directors, employees, agents, licensees, representatives, successors and assigns, and any and all persons in active concert or participation with any of them from:

(a)     Publishing false, misleading and/or disparaging statements about the NAOOA and/or its members;

(b)     Any use, distribution or exhibition of any advertising, statement, publication, or any other material which suggest that 1) the olive oils sold in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) the olive oils sold in supermarkets including the NAOOA members' products  are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that the labels of the olive oils sold in supermarkets including the NAOOA members' products contain false or misleading information;

(c)     Misrepresenting the nature, characteristics, qualities, or geographic origin of the olive oils sold in supermarkets including the NAOOA members' products; and

(d)     Making any statement or representation, or performing any act, which can or is likely to lead the trade or public, or any individual member thereof, to believe that: 1) the olive oils sold in supermarkets including the NAOOA members' products lack health benefits traditionally associated with olive oil products; 2) the olive oils sold in supermarkets including the NAOOA members' products are inferior to Defendants' UP-designated products; 3) the only way for consumers to ensure that they are receiving the health benefits from their olive oil purchases is by purchasing products bearing the UP certification and seal; 4) that the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil; and/or 5) that NAOOA members' labels contain false or misleading information.

2.      An Order directing Defendants to remove any materials, articles or advertising

containing false and misleading statements concerning the NAOOA, its Certified Quality Seal

Program and/or its members' products;

3.      An Order directing Defendants to remove and/or recall any products, materials, or advertising containing false and misleading statements relating to Defendants' misuse of the UP designation, including but not limited to those products sold and distributed by Defendant VFC to its retail customers throughout the United States;

4.      An Order requiring Defendants to engage in advertising to correct the false and deceptive statements made about (a) the NAOOA, its Certified Quality Seal Program, the olive oils sold in supermarkets including the NAOOA members' products; and/or (b) Defendants' products;

5.      An accounting of Defendants' profits realized in connection with the false advertising and deceptive acts, and an award in such amount to Plaintiff;

6.      An award to Plaintiff of exemplary damages;

7.      A recovery of actual, compensatory, consequential and punitive damages;

8.      An Order requiring Defendants to account for and pay Plaintiff any and all profits derived by Defendants as a result of Defendants' false advertising and deceptive acts relating to Plaintiff and/or its members' products;

9.      An Order deeming this case an exceptional case pursuant to 15 U.S.C. § 1117(a) and (b), and that Defendants be deemed liable for and be ordered to pay Plaintiff, in addition to the aforesaid damages, Plaintiff's costs and attorneys' fees, and that the amount of actual damages be trebled;

10.     An instruction to the United States Patent and Trademark Office to cancel trademark registration number 4,300,768  pursuant to Section 37 of the Lanham Act, 15 U.S.C. §§ 1119 *et seq.*; and

11.     Such other and further relief as the Court may deem reasonable, necessary and just.

## JURY DEMAND

Pursuant to *Fed. R. Civ. P.* 38(b), Plaintiff hereby demands a trial by a jury on all issues

so triable.

Respectfully submitted,

NORRIS McLAUGHLIN & MARCUS, P.A.

s/ Danielle M. DeFilippis

Danielle M. DeFilippis, Esq.
875 Third Avenue, 8th Floor
New York, New York 10022
212-808-0700 Phone
212-808-0844 Fax
E-mail: dmdefilippis@nmmlaw.com

Keith D. McDonald, Esq. (*Pro Hac Vice* application pending)
NORRIS, MCLAUGHLIN & MARCUS, PA
721 Route 202-206 North, Suite 200
Bridgewater, New Jersey 08807
908-722-0700 Phone
908-722-0755
E-mail: kdmcdonald@nmmlaw.com

Dated:        New York, NY
             December 19, 2016