**FILED  
CLERK**

10:35 am, Nov 02, 2017

**U.S. DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X  
NORTH AMERICAN OLIVE OIL  
ASSOCIATION,

                Plaintiff,

       -against-

D'AVOILIO INC., O LIVE BROOKLYN LLC,  
THE CRUSHED OLIVE OF BABYLON, INC.,  
THE CRUSHED OLIVE OF HUNTINGTON,  
INC., THE CRUSHED OLIVE OF SAYVILLE,  
INC., THE CRUSHED OLIVE OF  
STONYBROOK, INC., THE CRUSHED  
OLIVE OF WADING RIVER, INC. and  
VERONICA FOODS COMPANY,

                Defendants.  
---------------------------------------------------------X

**MEMORANDUM OF  
DECISION & ORDER**  
2:16-cv-06986 (ADS)(ARL)

**APPEARANCES:**

**NORRIS MCLAUGHLIN & MARCUS, PA**  
*Counsel for the Plaintiff*  
875 Third Avenue, 8th Floor  
New York, NY 10022  
    By:   Ami Bhatt, Esq.,  
          Danielle M. Defilippis, Esq., Of Counsel

**LESTER SCHWAB KATZ & DWYER, LLP**  
*Counsel for the Defendant D'Avolio Inc.*  
100 Wall Street  
New York, NY 10005  
    By:   Thomas A. Catalano, Esq.,  
          Dennis M. Rothman, Esq., Of Counsel

**STERN & SCHURIN, LLP**  
*Counsel for the Defendant O Live Brooklyn LLC*  
595 Stewart Avenue, Suite 710  
Garden City, NY 11530  
    By:   Richard S. Schurin, Esq.,  
          Evgeny Krasnov, Esq.,  
          Michael Barer, Esq.,  
          Steven Stern, Esq., Of Counsel

**GOLDBERG SEGALLA LLP**
*Co-Counsel for the Defendants The Crushed Olive of Babylon, Inc., The Crushed Olive of Huntington, Inc., The Crushed Olive of Sayville, Inc., The Crushed Olive of Stonybrook, Inc., and The Crushed Olive of Wading River, Inc.*
665 Main Street, Suite 400
Buffalo, NY 14216
  By: Daniel B. Moar, Esq.,
     Aaron J. Aisen, Esq.,
     Daniel W. Gerber, Esq., Of Counsel

**AHMUTY DEMERS & MCMANUS**
*Co-Counsel for the Defendant The Crushed Olive of Babylon, Inc.*
200 I.U. Willets Road
Albertson, NY 11507
  By: Janice Berkowitz, Esq., Of Counsel

**Gutride Safier LLP**
*Counsel for the Veronica Foods Company*
100 Pine Street, Suite 1250
San Francisco, CA 94111
  By: Adam J. Gutride, Esq.,
     Seth Safier, Esq., Of Counsel


**SPATT, District Judge**:

  This is an action commenced by the North American Olive Oil Association ("NAOOA" or the "Plaintiff") against the Defendants, D'Avolio, Inc. ("D'Avolio"), O Live Brooklyn LLC ("O Live Brooklyn"), the Crushed Olive of Babylon, Inc., the Crushed Olive of Huntington, Inc., the Crushed Olive of Sayville, Inc., the Crushed Olive of Stonybrook, Inc., the Crushed Olive of Wading River, Inc., (together, the "Crushed Olive") and Veronica Foods Company ("Veronica") (collectively the "Defendants"). The complaint alleges that the Defendants are attempting to discredit and weaken the imported olive oil industry by challenging the purported health benefits that the Plaintiff asserts are associated with the consumption of olive oil, and by using their own "certification" to encourage customers to purchase olive oil produced by Veronica. The Plaintiff

asserts that such actions violate (1) Section 43(a) of the Lanham Act (Count 1); (2) N.Y. Gen. Bus. Law §§ 349, 350 (Count 3); and constitute (3) unfair competition under New York State law (Count 2); (4) defamation/slander under New York State law (Count 4); and (5) request that the Court cancel Veronica's trademark registration at issue (Count 5).

Presently before the Court are two motions to dismiss the Plaintiff's entire complaint, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1), and Rule 12(b)(6). One motion was filed by O Live Brooklyn and Veronica Foods and another by Crushed Olive (together, the "Instant Motions").

For the following reasons, the Defendants' Instant Motions are granted, pursuant to Rule 12(b)(1).

## I. BACKGROUND

A. THE FACTUAL BACKGROUND

The following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are accepted as true.

**1. The Parties**

The Plaintiff is a New Jersey-based trade association composed of olive oil marketers, packagers, producers and importers. The NAOOA was established in 1989 "to foster a better understanding of olive oil and its taste, versatility, and health benefits, and to ensure that olive oil sold in North America adheres to internationally recognized guidelines." It's members account for roughly 55 to 60% of the total olive oil sales in the United States. The NAOOA is a division of the non-profit Association of Food Industries, Inc. Complaint ¶ 2.

Veronica is a foreign company, which produces olive oil. The company's principal place of business is located at 1991 Dennison Street, Oakland, CA and it conducts business in New York State. *Id*. ¶ 11.

D'Avolio is a domestic corporation that exclusively sells olive oil from Veronica. The company's principal place of business is located at 5409 Main Street, Williamsville, NY. *Id*. ¶ 3.

O'Live Brooklyn, LLC, is a domestic limited liability corporation that sells olive oil. The company's principal place of business is located at 140 Fifth Avenue, Brooklyn, NY. *Id*. ¶ 4.

The Crushed Olive is a Long Island, NY based retailer of olive oils with six locations. *Id*. ¶¶ 5-10.

**2. The Facts**

The first documented case of olive tree cultivation occurred more than six thousand years ago, at roughly 4,000 B.C. in the Middle East. Since then, olive oil production has clustered around the Mediterranean basin, but also exists in Australia, South Africa, Chile, Argentina and the United States. Olive oil is used by American consumers in a variety of ways, from salad dressings to cooking. *Id*. ¶¶ 15, 17.

In 2004, the United States Food and Drug Administration concluded that "Limited and not conclusive scientific evidence suggests that eating about 2 tablespoons (23 grams) of olive oil daily may reduce the risk of coronary heart disease due to the monounsaturated fat in olive oil. To achieve this possible benefit, olive oil is to replace a similar amount of saturated fat and not increase the total number of calories you eat in a day." Food & Drug Administration, Letter Responding to Health Claim Petition dated August 28, 2003: Monounsaturated Fatty Acids from Olive Oil and Coronary Heart Disease (Nov. 1, 2004), https://www.fda.gov/food/ingredientspackaginglabeling/labelingnutrition/ucm072963.htm#v.

Over the last few decades, the United States has seen robust growth in the sale of olive oils. *Id.* ¶ 18.

Recently, the Defendants have begun to promote the sale of Veronica's "Ultra Premium" olive oils, which according to Veronica, represent the highest quality olive oils in the world. Veronica received a federal trademark registration for commercial use from the United States Patent and Trademark Office for the phrase "UP ULTRA PREMIUM EXTRA VIRGIN OLIVE OIL CERTIFIED LAB TESTED SENSORY EVALUATED HIGHEST STANDARD" as well as the following design portrayed below. *Id.* ¶¶ 24-27.



There is no third party that certifies to the quality of the Veronica olive oil that is marketed and sold with the trademarked image above. In describing the "certification," Veronica's website states: "[t]he UP standard is reserved for the finest extra virgin olive oils in the world, as such, the UP grade exceeds all existing European, Italian, Spanish, Greek, North American, Californian, or any other standard for the grade known as extra virgin olive oil. In order to qualify for the UP grade, the extra virgin olive oil must meet or exceed a comprehensive set of Production Storage,

Transportation, Testing, Chemistry and Organoleptic requirements." As Veronica owns the trademark, only Veronica olive oils are marketed and sold with the trademarked image set forth above, regardless of whether other olive oils meet or exceed the published standards. *Id*. ¶¶ 28-30.

In addition to the use of the "certified" trademark, the Plaintiff alleges that the Defendants have made a series of statements that question the health benefits associated with competing brands of olive oils, many of which are members of NAOOA. The Defendants have purportedly made the following statements:

1. Veronica: "Over 50% of the oil produced in the Mediterranean area is of such poor quality that it must be refined to produce an edible product."

2. D'Avolio: "As one of many examples of how organic is not necessarily synonymous with quality, health benefit, or authenticity, we will refer you to the 2010 UC Davis Study which examined numerous supermarket brands, including a very popular private label: Newman's Own Certified Organic 'Extra Virgin Olive Oil'. It, along with 70% of the other brands pulled and tested, failed to qualify chemically as Extra Virgin Olive Oil and was so old as indicated by its DAG score, to hold no health benefit. This study not only demonstrated that extra virgin olive oil is often misused, but also that the organic certification process does not take in to account quality, authenticity, or health benefit."

3. D'Avolio: "75-80% of what you're getting is not what they say on the label."

4. O Live Brooklyn: "The biggest misconception is that you can't cook with olive oil. This is what everybody says. Some people think it's just used for salad. It's a big misnomer. The reason is that if you're buying olive oil from a supermarket, it might

not be real olive oil, or it might be old. In this case, it's lost all of the goodness and freshness in it."

5. O Live Brooklyn: "[A]void major brands. Those bottles have been sitting around on shelves for God knows how long."

6. The Crushed Olive: "The market has become flooded with these oils that are regulated by absurdly low standards and fostered by numerous trade associations that sacrifice quality for price." *Id*. ¶¶ 34-40.

The Plaintiff alleges that the Defendants' actions are likely to or have already mislead consumers and claim that "[the] Plaintiff and its members have suffered and will continue to suffer damage including damage to their reputation, business and goodwill." *Id*. ¶ 45.

**B. THE RELEVANT PROCEDURAL HISTORY**

On December 19, 2016, the Plaintiff commenced this action by filing a complaint in this Court. The complaint set forth five causes of action, seeking: (1) an injunction requiring the Defendants to cease publishing certain statements about the NAOOA and its members; (2) a court order directing the Defendants to remove allegedly false or misleading statements from materials; (3) a court order directing the Defendants to remove or recall all products with false or misleading statements; (4) a court order "requiring Defendants to engage in advertising to correct the false and deceptive statements;" (5) an award of all profits the Defendants' realized in connection with the alleged false and misleading statements; (6) an award of exemplary damages; (7) actual, compensatory, consequential and punitive damages; (8) an award of attorneys' fees; (9) treble damages pursuant to 15 U.S.C. § 1117; and (10) an instruction to the United States Patent and Trademark Office to cancel the trademark at issue.

The Defendants have filed the Instant Motions pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), claiming that: (1) the Plaintiff lacks standing to sue; (2) the false labeling and trademark cancellation claims fail as a matter of law; and (3) the state law claims also fail as a matter of law. The Court will now review the issue of standing first as it involves the subject matter jurisdiction of this Court.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(1)

Rule 12(b)(1) requires dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction, it is the plaintiff's burden to establish the existence of subject-matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113; *see also Aurecchione*, 426 F.3d at 638 ("After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)). "Under FED R. CIV. P. 12(b)(1), '[even] a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" *Frisone v. Pepsico Inc.*,

369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (quoting *Peterson v. Continental Airlines Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997)).

In its assessment of whether it has subject-matter jurisdiction, the Court "need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other matters outside the pleadings." *Williams v. Runyon*, No. 97-civ.-4029, 1997 WL 77207, at *1 (S.D.N.Y. Feb. 17, 1999) (internal citations omitted); *accord N.Y.S. Catholic Health Plan, Inc. v. Acad. O&P Assoc.*, 312 F.R.D. 278, 294 (E.D.N.Y. 2015) (citing *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002)); *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

## B. STANDARD OF REVIEW: STANDING

"Article III, § 2, of the [United States] Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013) (internal quotation marks and citations omitted). "[Standing] functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 191, 120 S. Ct. 693, 710, 145 L. Ed. 2d 610 (2000); *accord Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975) ("The hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation.").

Whether or not standing is present is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). Any objection to standing is properly made using a Rule 12(b)(1) motion.

*See, e.g.*, *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014) (Spatt, J.) ("A motion to dismiss for lack of subject-matter jurisdiction under [FED. R. CIV. P.] 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim." (internal citations omitted)); *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (noting that an objection as to standing "is properly made on a Rule 12(b)(1) motion" (internal citations omitted)).

A plaintiff must establish a "case or controversy" in order to show the existence of Article III standing. *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S. Ct. 1601, 1607-08, 60 L. Ed. 2d 66 (1979). It is a plaintiff's burden to establish standing for every claim and form of relief. *Carver v. City of New York*, 621 F.3d 221, 225 (2d. Cir. 2010). "On a motion to dismiss, it is the burden of the party who seeks standing to sue to allege clearly facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 120 (S.D.N.Y. 2010) (internal citations omitted).

The Court will first turn to the Rule 12(b)(1) challenge to the Plaintiff's complaint as the lack of subject matter jurisdiction would potentially obviate the need to address the remainder of the Defendants' challenges. *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations omitted); *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946) (noting that subject matter jurisdiction must first be determined before the Court determines a motion to dismiss for failure to state a claim).

## C. WHETHER THE COURT WILL CONSIDER EXTRINSIC EVIDENCE

The Plaintiff contends that the Defendants' attempt to "introduce 'evidence' that falls well outside the confines of the [c]omplaint" "distort[s] the basic pleading requirements." In such matters, where the Defendants challenge subject matter jurisdiction, the Court is allowed to

consider evidence separate from the pleadings. *See Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits."). Consequently, the Court will consider extrinsic evidence submitted by both parties in determining the resolution of the instant motion. *See Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 495 n.2, (S.D.N.Y. 2011) ("[B]ecause the Court has considered whether it has subject matter jurisdiction over Plaintiff's claims under Rule 12(b)(1), the Court will still consider the [extrinsic evidence] submitted by Defendants to the extent that these documents relate to the subject matter jurisdiction of the Court." (internal citation omitted)) *aff'd*, 496 F. App'x 131 (2d Cir. 2012); *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) (Spatt, J.) ("[T]he Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question." (internal citations omitted)).

**D. ASSOCIATION STANDING**

    **1. Legal Standard**

"[A]n association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342, 97 S. Ct. 2434, 2442, 53 L. Ed. 2d 383 (1977); *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552, 116 S. Ct. 1529, 1534, 134 L. Ed. 2d 758 (1996) ("[A]n organization may sue to redress its members' injuries, even without a showing of injury to the association itself."). Such groups, such as the NAOOA have standing as a plaintiff to sue on behalf of their members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose;

and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006) (quoting *Hunt*, 432 U.S. at 343). Under the first prong of the *Hunt* analysis, an individual member must meet three requirements "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (internal citations and quotations omitted).

In the instant case, the Court finds that the Plaintiff failed to allege that it had standing to sue in this action because (1) its members do not have standing to sue in their own right because they have not suffered an "injury in fact;" and (2) the relief requested requires the participation of individual members in the lawsuit.

**2. Plaintiff's Members Do Not Have Standing to Sue in Their Own Right**

In the Court's view, the Defendants have successfully alleged that neither the Plaintiff nor the Plaintiff's members have suffered an "injury in fact." As the Plaintiff states in the complaint, the NAOOA alleges that it and its members suffered "damage to their reputation, business and goodwill." Complaint ¶ 40. This is a combination of pecuniary harm as well as reputational harm, both of which, as a general manager, may be injuries in fact. *See, e.g.*, *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003) ("The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing." (internal citations omitted)). As stated above, *Hunt* requires the Plaintiff and its members to demonstrate that they suffered an "injury in fact" that is concrete and particularized, and actual or imminent, rather than conjectural or hypothetical. *See Friends of the Earth*, 528 U.S. at 181-83.

When an organization seeks to represent its members, it must allege that those members suffered an injury, and do not merely have an interest in the outcome of the case. *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 61 (2d Cir. 1985). Such an injury must be definitive enough to provide a personal stake in the outcome of the case, and impact the plaintiff in a personal or individualized manner. *See Knaust v. City of Kingston*, 193 F. Supp. 2d 536, 540 (N.D.N.Y. 2002) (internal citations omitted).

Unlike in *Gully*, where the plaintiff suffered a reputational injury involving a regulatory agency making findings of professional misconduct, which was described by the Court as a "death knell" for her career, the Plaintiff here offers nothing but vague conjecture. The Plaintiff fails to explain how the Defendants' conduct impacts the Plaintiff or its members with any level of specificity. Mere conclusory statements that the actions at issue resulted in lost sales or damaged reputations are wholly insufficient. *See, e.g.*, *Floyd v. City of New York*, 302 F.R.D. 69, 119 (S.D.N.Y.), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (holding that there was no reputational injury in fact because the individual injuries are not adequately explained, for example by attached affidavits or declarations that state and describe how the subjects reputation was harmed).

Such a lack of specificity is equally prevalent in its claims of reputational harm as in its claims of pecuniary harm. It is not enough to allege, as the Plaintiff does, that Veronica's trademark harmed the business reputations of NAOOA or its members. The Plaintiff must allege facts that explain how the trademark had an impact on itself and its members' reputations. *See, e.g.*, *Floyd*, 302 F.R.D. at 119. As such, the Plaintiff has failed to allege an injury in fact to support standing for itself or on behalf of its members.

Further, the Plaintiff fails to allege that any injuries were incurred by any *specific* members of the Plaintiff. Generalized injury pleadings among the Plaintiff's members proliferate the complaint, but not a single member of NAOOA is tied to any of the alleged injuries. *See, e.g.*, Declaration of Bob Bauer ¶ 7 ("Plaintiff and its members have been damaged by Defendants' false and misleading advertising campaign."); Complaint ¶¶ 44 ("The use of the UP designation as well as the advertisements, statements made to the media and to the public, published articles posted to Defendants' website and other referenced representations are likely to mislead, or have misled, consumers about the nature, qualities, and characteristics of imported olive oils in supermarkets including the NAOOA members' products."), 45 ("As a result of Defendants' unlawful acts and statements, Plaintiff and its members have suffered and will continue to suffer damage including damage to their reputation, business and goodwill."), 81 ("Through these actions, Defendants have disparaged the Certified Quality Seal Program, the olive oils sold in supermarkets including the NAOOA members' products and the business reputation of the NAOOA and its members.").

This vague, conclusory pleading fails to establish that the Plaintiff or its members suffered an injury in fact. The Court simply does not have enough information to conduct an individual standing analysis regarding the Plaintiff's members, a requirement under the *Hunt* test for the Plaintiff to survive a motion to dismiss. *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, N.Y.*, 250 F. Supp. 2d 48, 57 (N.D.N.Y. 2003) (holding that general factual allegations of injury are "insufficient, even at the liberal pleading stage in which the litigation currently finds its home").

In response, the Plaintiff argues that dismissal is inappropriate at this stage as more specific information will materialize in discovery. However, "just because discovery may bear relevant fruit does not relieve plaintiff of its burden of demonstrating injury in fact on the pleadings." *Id*.

14

(citing *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 486, 102 S. Ct. 752, 766, 70 L. Ed. 2d 700 (1982)).

The Court finds that the Plaintiff cannot satisfy the first prong of the *Hunt* test and as such, based on the pleadings, the Plaintiff has not established the existence of standing.

### 3. The Relief Requested Requires the Participation of Individual Members

The Defendants further argue that the Plaintiff is unable to recover damages on behalf of its members because the nature and extent of the injury suffered requires individualized proof. This is required under the third prong of the *Hunt* test. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (internal citations omitted). Courts in the Second Circuit and beyond have refused to allow associational standing where the plaintiff seeks a remedy of damages rather than injunctive or declaratory relief. *See Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 847 F. Supp. 281, 286 (D. Conn. 1994), *aff'd*, 45 F.3d 58 (2d Cir. 1995) (collecting cases). "[The Court] know[s] of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members." *Bano*, 361 U.S. at 714; *JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*, No. 06-cv-2868, 2008 WL 819066, at *4 (E.D.N.Y. Mar. 25, 2008) ("This 'individualized proof' requirement establishes, in effect, a *de facto* rule against associational standing to seek monetary, as opposed to injunctive or declaratory, relief on behalf of association members." (internal citations omitted)).

In the instant case, the NAOOA's members have not been uniformly harmed. Whatever injury they may have suffered is particular to the unique circumstances of the individual member. Each member has varying sales, geographic concentration, quality of product, exposure to the Defendants' conduct and impact from the Defendants' conduct. To obtain relief in damages, both the injury itself and the magnitude of the injury would have to be analyzed on an

individualized basis. This would require each member who claims injury to join the suit as a party, as the NAOAA has no standing to claim such damages. As such, the Plaintiff also lacks standing to seek damages on behalf of its members.

The Court exercises its discretion and declines to address the merits of the parties' arguments under Rule 12(b)(6) as the Court lacks subject matter jurisdiction in this case. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### III. CONCLUSION

For the reasons stated above, the Instant Motions to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(1), are granted, as standing has not been established. The Clerk of the Court is directed to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York

November 2, 2017

*/s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge