UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NORTH AMERICAN OLIVE OIL ASSOCIATION,

                                        Plaintiff,

                        v.

D'AVOLIO INC., O LIVE BROOKLYN LLC, THE
CRUSHED OLIVE OF BABYLON, INC., THE
CRUSHED OLIVE OF HUNTINGTON, INC.,
THE CRUSHED OLIVE OF SAYVILLE, INC.,
THE CRUSHED OLIVE OF STONYBROOK, INC.,
THE CRUSHED OLIVE OF WADING RIVER, INC.,
and VERONICA FOODS COMPANY,

                                        Defendants.
----------------------------------------------------------------X

**FILED**
**CLERK**

4/30/2020 3:22 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
16-CV-6986 (SJF) (ARL)

FEUERSTEIN, District Judge:

Plaintiff North American Olive Oil Association ("Plaintiff" or "NAOOA") commenced

this action against D'Avolio Inc. ("D'Avolio"), O Live Brooklyn LLC ("O Live Brooklyn"), the

Crushed Olive of Bablyon, Inc., the Crushed Olive of Huntington, Inc., the Crushed Olive of

Sayville, Inc., the Crushed Olive of Stonybrook, Inc., the Crushed Olive of Wading River, Inc.

(together, "Crushed Olive"), and Veronica Foods Company ("VFC") (collectively,

"Defendants"), alleging *inter alia* violations of section 43 (a) of the Lanham Act, 15 U.S.C.

§§ 1051, *et seq.,* and of state law.  Currently before the Court are motions to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fᴇᴅ. R. Cɪv. P." or "Rule") filed by VFC

and O Live Brooklyn, and by Crushed Olive.  *See* VFC and O Live Brooklyn's Motion, Docket

Entry ("DE") [64] ; Crushed Olive's Motion, DE [65].  Plaintiff has opposed both motions.  For

the reasons set forth below, Defendants' motions are granted.

## I. BACKGROUND

### A. Factual History[1]

NAOOA, a division of the non-profit Association of Food Industries, Inc., is a trade association based in New Jersey comprising marketers, packagers, producers and importers of olive oil.  It was established in 1989 to "foster a better understanding of olive oil and its taste, versatility, and health benefits, and to ensure that olive oil sold in North American adheres to internationally recognized guidelines."  Compl.  ¶2.  Its members pledge to abide by olive oil quality and purity standards established by the International Olive Council ("IOC"), and NAOOA "offers a Certified Quality Seal Program to indicate compliance with global trade standards."  *Id.*  NAOOA members account for approximately 55-60% of total olive oil sales in the United States.  *Id.* ¶20.

VFC, which produces olive oil, is a foreign corporation with its principal place of business in California.  VFC promotes its olive oils using the "Ultra Premium" designation ("UP mark"), a new category of olive oil created by VFC which purportedly represents the highest quality olive oil in the world.  Compl. ¶25.  VFC's website claims that the UP standard "is reserved for the finest extra virgin olive oils in the world, and as such, the UP grade exceeds all existing European, Italian, Spanish, Greek, North American, Californian, or any other standard for the grade known as extra virgin olive oil." *Id.* ¶30.  VFC registered the UP mark and the word mark "UP ULTRA PREMIUM EXTRA VIRGIN OLIVE OIL CERTIFIED LAB TESTED SENSORY EVALUATED HIGHEST STANDARD" with the United States Patent and Trademark Office ("USPTO").  The UP mark is registered for commercial use and not as a certification mark.  *Id.* ¶28.  The UP standard and mark is used by VFC and its licensees.  The

---

[1] The facts are taken from the Complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion.

Crushed Olive, D'Avolio, and O Live Brooklyn (the "Retail Defendants") are specialty retail stores that sell olive oil including items produced and distributed by VFC.

According to the complaint, Defendants are collectively "engaged in a targeted and concerted effort to attach the NAOOA and its members' olive oil products sold in supermarkets" by using online statements, articles, and promotional pieces to focus on "an alleged lack of health benefits associated with the consumption of olive oils sold in supermarkets including NAOOA members' olive oil products." Compl. ¶23.   Defendants have also directly targeted NAOOA by publishing disparaging statements that attack its "reputation as an industry leader in providing quality and purity standards for olive oil in the United States." *Id.*  ¶22.  In addition, VFC has introduced a "new premium standard for olive oil" which Plaintiff claims is a marketing effort to deceive olive oil purchasers. *Id.*  ¶21.

1. Disparagement of Olive Oil Sold in Supermarkets

VFC's website states, without support, that "[o]ver 50% of the oil produced in the Mediterranean area is of such poor quality that it must be refined to produce an edible product." Compl. ¶34.  The complaint further alleges, upon information and belief, that VFC provides retailers with marketing materials containing false and disparaging information, which the retailers use to "target imported olive oil products sold in supermarkets, and specifically the brands sold by NAOOA members." *Id.* ¶33.

The complaint also contains allegations regarding misstatements made by the Retail Defendants, as follows:

- D'Avolio "distorts findings of an alleged industry report to represent to consumers that various brands sold in supermarkets hold no health benefits," Compl. ¶35, by on its website referencing a study undertaken by the University of California at Davis in 2010 (the "UC Davis Report"), and stating that the study examined "numerous supermarket brands" and found that 70% "failed to qualify chemically as Extra Virgin Olive Oil and was so old . . . **to hold no health**

**benefit.**  This study not only demonstrated that extra virgin olive oil is a term that is often misused, but also that the organic certification process does not take in to account quality, authenticity, or health benefits."  *Id.* ("D'Avolio Stmt")[2];

- O Live Brooklyn's owner gave an interview in which he stated that "if you're buying olive oil from a supermarket, it might not be real olive oil, or it might be old," Compl. ¶38 ("O Live Brooklyn Stmt 1"), in which case it has "lost all of the goodness and freshness in it." *Id.*;

- O Live Brooklyn's owner gave another interview, advising readers to "avoid major brands.  Those bottles have been sitting around on shelves for God knows how long," Compl. ¶39 ("O Live Brooklyn Stmt 2"), which, according to Plaintiff, suggests that this oil has lost its "quality and health benefits. " *Id.*; and

- The Crushed Olive's website states that "[t]he market has become flooded with these oils that are regulated by absurdly low standards and fostered by numerous trade associations that sacrifice quality for price."  Compl. ¶40 ("Crushed Olive Stmt").  Plaintiff asserts that "[t]he reference to trade associations can only be to the NAOOA, which is widely recognized as the leading olive oil trade association in North America." *Id.*

The statements set forth above are the only statements or conduct attributed directly to the Retail Defendants.[3]

The complaint alleges that the "Retail Defendants, in concert with Defendant VFC, have engaged in a false and misleading advertising campaign and published false and misleading statements."  Compl.  ¶ 22.  However, with the exception of the Crushed Olive Defendants who are defined by the complaint as a single entity, there are no allegations regarding any joint action taken by any two defendants.

---

[2] The quotation in the complaint cites the D'Avolio website but fails to indicate whether the bold emphasis actually appeared on the website or was added by Plaintiff.

[3] A second statement attributed to D'Avolio was not considered by the Court for reasons that will be set forth below.  *See infra,* n.5.

2. <u>VFC's Ultra Premium Standard</u>

VFC and its licensees use the UP designation and mark to market VFC's products. Defendants market their olive oils to mislead consumers "into falsely believing that the recognized benefits of olive oil can only be achieved by consuming olive oil" meeting the UP standard and certification.  Compl.  ¶31.  Defendants fail to advise the consumer that the UP mark cannot be displayed on the product of other olive oil producers because the standard and mark is the "intellectual property of Defendant VFC and its licensees."  *Id.*  As such, another producer cannot label its product with the UP mark even if its product meets or exceeds the UP standards.  *Id.* ¶30.  Plaintiff alleges that the UP mark and designation is false and misleading in that it leads the consumer to believe that the olive oil was certified, sponsored, or approved by a third party where in reality, the UP mark  "is a self-created designation used exclusively by [VFC] and its retailers to sell [VFC] olive oil."  *Id.*  ¶29.

**B. Procedural History**

Plaintiff filed its complaint on December 19, 2016 asserting six (6) claims for relief:  (1) false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition under New York law; (3) deceptive acts and practices in violation of New York General Business Law ("GBL") §§ 349 and 350; (4) product disparagement/trade libel; (5) defamation/slander; and (6) cancellation of VFC's UP trademark pursuant to Section 37 of the Lanham Act, 15 U.S.C. §§ 1119 *et seq.*  NAOOA seeks damages, cancellation of VFC's UP mark, and injunctive and declaratory relief.

Defendants moved to dismiss the complaint on several grounds, including NAOOA's standing to bring suit.  By Memorandum of Decision and Order dated November 2, 2017, District Judge Arthur D. Spatt granted Defendants' motions to dismiss the complaint pursuant

only to Rule 12(b)(1), finding that NAOOA lacked standing to bring suit on behalf of its members. *See* Memorandum & Order of 11/2/2017, DE [40].  Judge Spatt subsequently granted Plaintiff's motion for reconsideration in part, adhering to the earlier decision regarding NAOOA's lack of associational standing, but finding that it has standing to sue on its own behalf. *See* Memorandum & Order of 8/20/2018, DE [48].  The prior order was vacated, the case reopened, and Defendants were given leave to refile their motions to dismiss on the grounds raised in the original motions, but not previously addressed. *See id.;* Vacateur of Judgment, DE [52].  Upon Judge Spatt's recusal in October 2018, the matter was reassigned to this Court and Defendants' refiled their motions seeking dismissal pursuant to Rule 12(b)(6) for failure to state a claim.

Based on law of the case doctrine, the remaining claims are analyzed on the basis of NAOOA's individual plaintiff standing.  The following allegations pertain to harm suffered by NAOOA:

- Defendants "targeted the NAOOA itself by publishing disparaging statements attacking the NAOOA's reputation as an industry leader in providing quality and purity standards for olive oil in the United States," Compl.  ¶ 22;

-  Defendants' use of the UP mark, advertisements, statements to the media, published articles and "other referenced representations" are likely to cause consumers to believe that "the NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil," Compl. ¶¶44, 49, 57, 65,

- VFC's marketing campaign directly targets the NAOOA, citing the Crushed Olive's website statement that "[t]he market has become flooded with these oils that are regulated by absurdly low standards and fostered by numerous trade associations that sacrifice quality for price" and concluding that the "reference to trade associations can only be to the NAOOA, which is widely recognized as the leading olive oil trade association in North America."   Compl. ¶40; and

- In promoting the UP standard, "Defendants have attempted to discredit the NAOOA as an industry leader in upholding quality and purity standards.  Compl. ¶43.

The complaint contains no factual allegations regarding any financial harm to NAOOA.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Standards

The standards for analyzing a motion to dismiss pursuant to Rule 12(b)(6) are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff.  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679.  A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

**B.  Consideration of Materials Outside the Pleadings**

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  In considering a motion to dismiss for failure to state a claim, the Court "may review only a narrow universe of materials," generally not looking beyond "'facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (internal quotation marks and citation omitted).  The Federal Rules of Evidence permit a court to "take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *Island Software & Computer Serv. Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (quoting FED. R. EVID. 201(b)).  The Court may also take judicial notice of trademark registrations issued by the USPTO.  *See, e.g.,  Ahmed v. GEO USA LLC,* No. 14-CV- 7486, 2015 WL 1408895, at *1 (S.D.N.Y. Mar. 27, 2015); *see also Duckett v. Ramela Distrib. Inc.,* No. 11 Civ. 9532, 2012 WL 4336165, at * (S.D.N.Y. Sept. 18, 2012) (taking judicial notice of registration information contained in the USPTO trademark database).

An exception to the general rule allows a court to also consider documents "integral" to the complaint.  The Second Circuit instructs that a document is "integral to the complaint where the complaint relies heavily upon its terms and effect."  *Goel,* 820 F.3d at 558-59 (internal quotation marks and citation omitted).  "Merely mentioning a document in the complaint will not

satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Id.*; *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough" (emphasis in original)).   "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns,* 458 F.3d at 157.   A court may consider the full text of documents partially quoted in the complaint so long as there is no dispute regarding the accuracy or authenticity of the document.  *See Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006); *see also Diaz v. NBC Universal, Inc.,* 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (on motion to dismiss, the court "may consider the full text of documents that are quoted in the complaint..."), *aff'd,* 337 F. App'x 94 (2d Cir. 2009).

　　　Defendants have provided various materials that they urge the Court to consider in deciding this motion.[4]  Crushed Olive submitted a declaration from its Operations Manager attaching a copy of the text from Crushed Olive's website that includes the statement attributed to the Crushed Olive defendants.  *See* Declaration of Dana Laughlin, Ex. A ("Crushed Olive website"), DE [27-2].   VFC and O Live Brooklyn contend that the Complaint incorporates by reference both the UC Davis Report and VFC's website, and states that this Court "must consider" those materials on this motion.  *See* O Live Brooklyn & VFC Memorandum of Law

---

[4] The materials were submitted as part of Defendants' original motions to dismiss.  Although they have not resubmitted these materials in their renewed motions, they continue to refer to them in their memoranda of law.

("VFC Mem. of Law") at 2, n.1 DE [64-1].  They cite an attorney's declaration attaching, *inter alia,* the UC Davis Report, copies of VFC's UP website and NAOOA's website, various articles regarding olive oil and its properties, and Trademark Registrations for marks not at issue in this case.  *See* Patek Decl., DE [24].

The Court takes judicial notice of the trademark registrations provided by Defendants but only for the fact that the USPTO has issued trademarks utilizing variations of the word "certified."   Defendants have also submitted the full text of some of the allegedly false statements as contained in screenshots of websites and a copy of an article.  *See* Patek Decl.. Ex. C ("UP website"); *id.,* Ex. J ("WIAT Article"); Laughlin Decl., Ex. A  ("Crushed Olive website").   Plaintiff does not dispute the authenticity of these materials, arguing only that the UP website is "not integral to the Complaint and should be disregarded."  Plaintiff's Memorandum of Law in Opposition to Renewed Motions to Dismiss ("Pl. Opp.") at 4 DE [66].  The Court disagrees; to the extent NAOOA has cited partial quotations of statements from these materials as allegations in the complaint, the Court will review those statements in context.

Defendants also offer the UC Davis Report, which is referenced briefly in the complaint. NAOOA does not reference the report for its own content, however, but rather alleges that Defendants have purposely mischaracterized the report.  Thus, Plaintiff did not rely on the actual report itself in framing its complaint and the report is not integral to it.  The remainder of the material submitted by Defendants is either not referenced within, or is not integral to, the complaint.   As such, the Court must, in order to consider the material, treat the motion as one for summary judgment.  *See* FED. R. CIV. P. 12(d). The Court declines to do so, and therefore will exclude the remaining extraneous material submitted by Defendants and not consider that evidence in determining this motion.

## III.  DISCUSSION

### A.  Lanham Act Claims

Section 43 of the Lanham Act, provides for liability where a person in connection with any goods,

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

15 U.S.C. § 1125(a)(1)(B).   A plaintiff may recover where a defendant falsely advertises and misrepresents its own goods or services, or where a defendant disparages or misrepresents plaintiff's goods or services.  "The Lanham Act does not prohibit false statements generally.  It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services."  *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 238 (2d Cir. 2001) (quoting *Groden v. Random House, Inc.,* 61 F.3d 1045, 1051 (2d Cir. 1995)).  To state a claim for false advertising, a plaintiff must allege "(1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff."  *Sussman-Automatic Corp. v. Spa World Corp.,* 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).

A plaintiff may establish that a statement is false under two theories: either by demonstrating that challenged advertisement is "literally false, *i.e.,* false on its face," *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 153 (2d Cir. 2007), or that the statement, while literally true, constitutes an implied falsehood that is "nevertheless likely to mislead or confuse consumers."  *Tiffany (NJ) Inc. v. eBay, Inc.,* 600 F.3d 93, 112 (2d Cir. 2010).

11

Statements constituting opinion are not actionable under Lanham Act if they "could not reasonably be seen as stating or implying provable facts" regarding goods or services. *Groden,* 61 F.3d at 1051; *see also Prof'l Sound Servs., Inc. v. Guzzi,* No. 02 Civ. 8428, 2003 WL 22097500, at *2 (S.D.N.Y. Sept. 10, 2003) ("Subjective claims or opinions are not actionable because they are not statements of fact that can be proven true or false"), *aff'd,* 159 F. App'x 270 (2d Cir. 2005).   In addition, under "both the Lanham Act and the Constitutional free speech clause, statements of opinion about commercial matters cannot constitute false advertising." *Davis v. Avvo, Inc.,* 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §27:67 (5th ed. 2017)).

In addition to proving falsity, a plaintiff must also show that the statement was material such that it misrepresented an "inherent quality or characteristic of the product." *S.C. Johnson & Son,* 241 F.3d at 238 (internal quotation marks and citation omitted).  The statement is not material unless it would influence the purchasing decision of the consumer. *See, e.g., Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997); *Advanced Magnetic Closure, Inc. v. Rome Fastener Corp.,* No. 98 CV 7766, 2005 WL 1241896, at *12 (S.D.N.Y. May 24, 2005).

For a statement to constitute "commercial advertising or promotion" under the Lanham Act, "a statement must be (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" *Gmurzynska v. Hutton,* 355 F.3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 57-58 (2d Cir. 2002)). "[T]he touchstone of whether a defendant's actions may be considered

12

'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market.  Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Fashion Boutique,* 314 F.3d at 57.

The complaint asserts two types of false advertising by Defendants, namely: (1) the use of false and misleading statements regarding the quality of olive oil sold in supermarkets, which is a product disparagement claim, and (2) the use of the UP mark to promote VFC-produced olive oil.  Plaintiff states that the "relevant question" on a motion to dismiss the Lanham Act claims is "whether the complaint plausibly alleges that Defendants' actions "were part of an organized campaign to penetrate the olive [oil] market thereby damaging Plaintiff's business reputation and goodwill."  Pl. Opp. at 6.  The answer to this query is "No."  To the extent NAOOA seeks to hold all the Defendants jointly liable, there are absolutely no factual allegations to support a theory that the Defendants were acting in concert to affect any plan. The mere fact that the Retail Defendants sell VFC-produced olive oils bearing the UP mark is not sufficient to tie them together in an organized campaign to promote those products to the exclusion of others.  Notably, the complaint does not allege that the Retail Defendants sell only VFC-produced products.  In addition, the complaint alleges only minimal, stray conduct by the Defendants individually with the result that the complaint fails to state a plausible claim that any one defendant alone conducted an organized campaign to penetrate the market on its own behalf.

1.   Defendants' Statements and Product Disparagement

NAOOA claims that Defendants have made false, disparaging and misleading statements about olive oils sold in supermarkets, and that this conduct constitutes product disparagement and false advertising in violation of the Lanham Act.  Defendants' advertisements, media

statements, published articles, and websites are "likely to mislead, or have misled, consumers about the nature, qualities, and characteristics of olive oils sold in supermarkets including the NAOOA members' products and Defendants' own products."  Compl. ¶48.  As discussed above, there are no plausible allegations supporting a suggestion that Defendants acted jointly, and therefore the following analysis is limited to whether each individual statement/action constitutes a violation by the relevant Defendant(s).

The complaint fails to allege, and NAOOA fails to enunciate a theory, that any statement concerning the nature, quality, and characteristics of supermarket olive oils has any bearing on NAOOA itself.  Any allegation that an attack on unnamed "supermarket olive oil," which may, or may not have been produced by some unspecified member of the association, does not inexorably extend to an attack on the reputation of NAOOA.  The complaint alleges no facts that plausibly support such a leap.

Even assuming *arguendo* that NAOOA has standing to assert a Lanham Act false advertising claim as to the Defendants' statements, those statements do not constitute violations of the Act.  NAOOA points to the following statements it contends are literally false:  (1) VFC's website statement that "[o]ver 50% of the oil produced in the Mediterranean area is of such poor quality that it must be refined to produce an edible product;" (2) D'Avolio's statement allegedly mischaracterizing the UC Davis Report; and (3) O Live Brooklyn's statement in an interview that "...if you're buying olive oil from a supermarket, it might not be real olive oil, or it might be old.  In this case, it's lost all of the goodness and freshness in it." *Id.* ¶38.  Pl. Opp. at 7 (citing

Compl. ¶¶34, 37, 38).[5]  Each allegation regarding these statements contains a conclusory assertion by NAOOA with no additional information suggesting why it is false.  Although a plaintiff need not prove falsity at the pleading stage, the allegation that a statement is false without any support whatsoever does not raise that allegation above the speculative level.

NAOOA's issue with the VFC statement is that "no support is offered for this false and misleading statement."  Compl. ¶34.  Beyond this conclusory statement, the complaint provides no allegation to support its contention that the statement is, in fact, false.  As to the O Live Brooklyn statement, the complaint merely alleges that it "falsely suggest[s] that there is nothing 'good' about the supermarket olive oils and that they might not be real," Compl. ¶38, but offers no concrete factual allegation demonstrating the falsity of the statement.  NAOOA does not suggest that olive oil is immune from diminution of quality over time, thus making it difficult to imagine that the O Live Brooklyn statement is literally false since for that to be the case, logic dictates that the converse is true and that all olive oil sold in the supermarket is both fresh and authentic.  The D'Avolio statement is attacked because it "distorts findings of an alleged industry report to represent to consumers that various brands sold in supermarkets hold no health benefits."  Compl. ¶35.  As an example of this distortion, NAOOA offers a quotation from the

---

[5]NAOOA also cites a second statement attributed to D'Avolio in which D'Avolio allegedly mischaracterizes the UC Davis Report by stating that "75-80% of what you're getting is not what they say on the label."  Compl. ¶36 (citing online article from wiat.com).  The Court has reviewed the copy of the full article and finds that the alleged statement set forth in the complaint does not appear in the article. The only similar language appears in a paragraph discussing a 60 Minutes investigation of widespread fraud in the olive oil importing process and states that "[s]ources consulted in the investigation suggested as much as 80 percent of imported olive oil is tainted with other oils like sunflower oil or canola oil." Declaration of Anthony J. Patek, ("Patek Decl."), DE [24] , Ex. J ("WIAT Article"), p.2.  As the source material demonstrates that the statement was not, in fact, made by anyone, including D'Avolio, the Court declines to consider this allegation.

D'Avolio website referencing the UC Davis report.[6]  The complaint again fails to identify the alleged falsity or distortion.

Of course, a statement's falsity is not determinative of a valid Lanham Act claim for false advertising unless the misrepresentation is made about one's or another's goods and services. The complaint fails to articulate how any of the statements relate to any goods or services of NAOOA's.  For example, it is unclear how VFC's statement about the poor quality of a portion of the olive oil produced in the Mediterranean area relates in any way to the NAOOA, a trade association of "marketers, packagers, producers and importers of olive oil for sale in the United States and Canada."  Compl. ¶2.

NAOOA also argues that it has adequately pled that the statements are impliedly false, having alleged that Defendants "made material, promotional statements falsely implying that any olive oil other than a UP certified product lacks quality and health benefits [and] cause damage to Plaintiff's business reputation."  Pl. Opp. at 7.  Consistent with the conclusory nature of the allegations in the complaint, NAOOA fails to provide any further argument in support of the complaint.  The complaint lacks any nonspeculative allegations that support a suggestion that any consumer would be misled by these statements to NAOOA's detriment.

---

[6] NAOOA is particularly dismissive of the UC Davis Report and Defendants' purported reliance thereon, contending that they "distorted the findings" of the report and knew that the report was "unreliable...and had been widely discredited in the industry."  Pl. Opp. at 13.  Although the Court has not considered the UC Davis Report itself in deciding this motion to dismiss, it is noted that NAOOA's attacks on the report are overstated.  Cases discussing the UC Davis Report do not "discredit" it, but rather point out the limitations imposed on a consumer relying on it as the basis for a suit  related to the purchase of items produced by one of the brands discussed in the study.  *See Fahey v. Deoleo USA, Inc.,* No. 18-CV-2047, 2018 WL 5840664, at *2-3 (D.D.C. Nov. 8, 2018) (noting that the UC Davis study of 2010 did not, by itself, support an action brought by a consumer who purchased a product in the District of Columbia in 2018 given the small sample size in the study, its tie to one geographic region, and the time elapsed since the study was completed); *Meyer v. Colavita USA, Inc.,* No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) ("the study paints a very incomplete picture from which one could at best infer that a portion of Defendants' extra virgin olive oil products, distributed and sold in certain locations in California, do not meet all of the standards promulgated by the IOC for extra virgin olive oil").

Moreover, "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable." *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir. 1995).  Defendants argue that the statements are opinion and/or "puffery" and are therefore not actionable under the Lanham Act.  Puffery "might take the form of an overstatement expressed in broad and commendatory language, as opposed to a misleading description or false representation about an inherent characteristic of a good or service." *Davis,* 345 F. Supp. 3d at 541-42.  Courts considering whether a statement constitutes puffery look to several factors including vagueness, subjectivity, and the inability to influence a consumer's expectations. *See Avola v. Louisiana-Pacific Corp.,* 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013).

The statements attributable to Defendants are largely vague and lacking in precise meaning. *See* Crushed Olive Stmt (referring to "absurdly low standards"); O Live Brooklyn Stmt (opining that supermarket olive oil "might not be real olive oil, or it might be old"); VFC Stmt (over 50% of olive oil from the Mediterranean is of "such poor quality" and requires refining to "produce an edible product").   As such, they consist merely of "generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Fink v. Time Warner Cable,* 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), *partial reconsideration granted on other grds,* 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011).

2.  Defendants' Use of the UP Mark and Certification

The statements attributed to the Retail Defendants do not allude to, let alone specifically reference, the UP Mark, and the complaint contains no factual allegations that the Retail Defendants assisted in the creation of the UP mark or standard.   The complaint is devoid of any allegation of any conduct by the Retail Defendants beyond the fact that they sell products that display the UP mark. This fact alone is conclusory and does not plausibly allege any involvement

by the Retail Defendants in the UP mark or certification process.  Accordingly, the Court construes this claim as lying only against VFC.

The complaint fails to state a plausible claim that VFC's use of the UP mark has affected NAOOA in any regard.  NAOOA alleges, in conclusory fashion, that use of the UP designation is likely to cause consumers to believe, *inter alia,* that "NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil."  Compl. ¶44. There are no facts alleged to support this contention.

Even if NAOOA were able to establish standing to assert this claim, the complaint fails to state it.  NAOOA does not suggest that an entity cannot develop its own product standards; indeed, it expressly alleges that it has its own Certified Quality Seal Program and standards. Compl. ¶2.  Nor does it claim that the advertising for products with the UP mark affects NAOOA's  reputation.  Instead, NAOOA's claim is premised upon VFC's alleged improper use of the UP designation.  *See* Pl. Opp. at 9 (NAOOA does not "take issue with defendant [VFC] having its own standard," but argues that VFC has misused the UP certification to mislead the public by "suggesting consumers can only ensure quality and health benefits only by purchasing UP-certified oils").  The allegations in the complaint state two theories of relief regarding the use of the UP mark.

NAOOA first focuses on the "certification" aspect of the UP mark.  The UP mark is registered as a trademark with the USPTO, not as a certification mark.  The UP mark displays a "TM" symbol and includes the language "Highest Standard" and "Certified*Lab Tested*Sensory Evaluated."   NAOOA does not contend that any of these statements are literally false, but questions the use of the term "certification" because "there is no third party that certifies the quality of the olive oils that bear the UP designation."  Compl. ¶28.  Since the UP mark is only

used on VFC's products, NAOOA claims that its use is false and misleading because "consumers are led to believe that the olive oil was certified, sponsored or approved by a[] third party." *Id*. ¶29; *but see id* ¶25 (acknowledging that the UP website states that "UP is a new category of olive oil **created by VFC,** which purportedly represents the highest quality olive oil in the world" (emphasis added)).  Thus NAOOA appears to speculate that the use of the UP mark is impliedly false.

In order to constitute false advertising, the statements must be material in that they go to an inherent quality or characteristic of the product, in this case the VFC-produced olive oil. NAOOA has cited no case indicating that the mere use of the word "certified" is misleading, not has it claimed that Defendants have advertised the UP program in any way that is misleading with respect to the testing criteria.  Significantly, NAOOA does not allege that the products that are UP-designated do not, in fact, meet those standards, or that the standards are themselves fraudulent, but rather focuses entirely upon hypothetical consumer confusion regarding who is implementing the standard.  In the absence of allegations regarding the certification process itself as applied to VFC's products, the actual identity of the tester is not material to the quality and characteristics of the product.  In other words, NAOOA has not plausibly alleged that the mere omission of the identity of the tester alone is likely to influence the purchasing decision of a consumer.

Second, NAOOA alleges that Defendants have marketed olive oil with the UP mark to "mislead consumers into falsely believing that the recognized health benefits of olive oil can only be achieved by consuming olive oil bearing" the UP mark.  Compl. ¶31.  There are no factual allegations in the complaint to support this argument.  The paragraphs cited by NAOOA in support of this contention in its memorandum of law, *see* Pl. Opp. at 9, consist of conclusory,

nonspecific allegations that "numerous statements have been made to mislead consumers into falsely believing that the recognized health benefits of olive oil can only be achieved by consuming olive oil bearing VFC's UP standard and certification," *id.*, and that Defendants' "statements and commercial efforts are likely to cause, or have caused, consumers to believe" that the only way consumers can receive health benefits from olive oil is to purchase "products bearing the UP certification and seal." *Id.* ¶49.[7]  Conspicuously absent from the complaint is any factual allegation that any Defendant has stated that *only* olive oil bearing the UP designation can provide health benefits.

Further review of the complaint reveals no additional factual allegations that might support NAOOA's argument.  As discussed *supra,* the statements made by the Retail Defendants do not specify the UP mark in any way.  The complaint cites two statements by VFC.  One does not mention the UP mark at all.  *See* Compl. ¶34 ("[o]ver 50% of the oil produced in the Mediterranean area is of such poor quality that it must be refined to produce an edible product").  The second statement, purportedly taken from VFC's website, states that

> [t]he UP standards is reserved for the finest extra virgin olive oils in the world, as such, the UP grade exceeds all existing European, Italian, Spanish, Greek, North American, Californian, or any other standard for the grade known as extra virgin olive oil.  In order to qualify for the UP grade, the extra virgin olive oil must meet or exceed a comprehensive set of Production, Storage, transportation, Testing, Chemistry, and Organoleptic requirements [created by VFC].

*Id.* ¶30 (alterations in original).  NAOOA does not allege that this statement is false or impliedly false, but rather argues that "the UP standard and seal is reserved only for VFC olive oils and

---

[7] NAOOA cites one additional paragraph of the complaint, which alleges that the UP certification and seal "is also likely to cause, or has caused, consumers to believe that Defendants'' olive oil products are sponsored or approved by a third party" when it is instead a commercial and promotional tool to sell VFC's products.  Compl. ¶50.  This allegation does not allege any conduct by Defendants pertaining to the health benefits of olive oils that are UP-designated.

cannot, pursuant to VFC's federal trademark rights, be used by any other producers or seller,
even if that producer's products meet or exceed the parameters of VFC's UP standard."  *Id.*
Assuming this allegation to be true, NAOOA has not established that VFC's statements
regarding the UP mark and the standards on which it is granted constitute a Lanham Act claim
for false advertising.

**B.  Cancellation of Trademark Registration**

NAOOA seeks cancellation of the UP mark trademark because it is "false and
misleading" and used by Defendants "to represent to the public that the olive oil which met this
standard is 'certified'" despite the lack of registration as a certification mark.  Compl. ¶88.
Federal courts are empowered to cancel the registration of a federally registered trademark.  *See*
15 U.S.C. § 1119 (the court may "determine the right to registration, order the cancelation of
registrations, in whole or in part. . . and otherwise rectify the register with respect to the
registrations of any party to the action").  A plaintiff seeking cancellation of a registration must
establish that "(1) it has standing to bring a cancellation claim, and (2) there are valid grounds for
why the registration should not continue to be registered."  *Citigroup Inc. v. City Holding Co.,*
No. 99 Civ 10115, 2003 WL 282202, at *14 (S.D.N.Y. Feb. 10, 2003).

A party has standing to seek cancellation where it has "a real commercial interest in the
cancellation—that is, reason to believe it will be harmed absent relief."  *Gucci Am., Inc. v.
Guess?, Inc.,* 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).  To demonstrate a "real interest," the
party must "have a direct and personal stake in the outcome of the cancellation."  *Quality Serv.
Grp. v. LJMJR Corp.,* 831 F. Supp. 2d 705, 712 (S.D.N.Y. 2011) (internal quotation marks and
citation omitted).    There are no factual allegations in the complaint that satisfy this requirement.
Notably, NAOOA does not allege that the UP mark creates any confusion with, or harm to,

NAOOA's own Certified Quality Seal Program.  As NAOOA has not adequately pled its direct

stake in the cancellation of the UP mark, it does not have standing to seek cancellation of the UP

mark.

Assuming *arguendo* that NAOOA has standing to seek cancellation of the UP mark

registration, the remaining issue is whether it has plausibly pled any valid basis for cancellation.[8]

If a mark has not yet become incontestable, a registration may be cancelled for any reason that

would have been prevented registration in the first place. *See Patsy's Italian Rest. v. Banas,* 658

F.3d 254, 266 (2d Cir. 2011) (noting that "the principles applicable to the initial registrability of

a mark should also be applied to a claim seeking the cancellation of a registration that has not yet

become incontestable pursuant to Section 1065"). "The valid ground that must be alleged and

ultimately proved by a cancellation petitioner must be a statutory ground which negates the

[trademark holder's] right to the subject registration."  *Young v. AGB Corp.,* 152 F.3d 1377,

1380 (Fed. Cir. 1998) (internal quotation marks and citation omitted).

The complaint does not indicate the specific statutory basis supporting NAOOA's claim

for cancellation of the UP mark.  *See* Compl. ¶ 89 (alleging that the facts "justify cancellation of

the registration of [VFC's] UP trademark, pursuant to Section 37 of the Lanham Act, 15 U.S.C.

§§1119 *et seq.*").  In its opposition to the current motion, NAOOA relies upon two statutory

provisions in the Lanham Act:  the trademark registration section that bars registration of a mark

that "[c]onsists of or comprises . . .deceptive. . .matter," 15 U.S.C. §1052(a), and  the

cancellation section that permits a petition to cancel a registration for a mark where the

---

[8] The grounds for cancellation of a mark vary based upon whether it is incontestable, having been in use
for five continuous years subsequent to registration, or contestable.  The complaint is silent on this point,
as are the parties' papers.  The complaint identifies the registration number of the UP mark, 4,300,768,
which, according to the USPTO, was registered on March 12, 2013. *See Kaplan, Inc. v. Yun,* 16 F. Supp.
3d 341, 345 (S.D.N.Y. 2014) (noting that a court may take judicial notice of USPTO records). Thus the
UP mark registration was contestable at the time the complaint was filed.

registered mark "is being used by . . . the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used." 15 U.S.C. §1064(3).

The complaint does not specify what deceptive matter was used by VFC in its registration. Instead, NAOOA contends that the use of the mark "as a certification mark in commerce misrepresents the source of the services (i.e., the certification)." Pl. Opp. at 18. This argument mischaracterizes the registration for the UP mark, which is not a service or certification mark, but rather a trademark that identifies the source of the *goods*, *i.e.,* olive oils produced by VFC that meet a set of published standards. NAOOA again concentrates on the term "Certified," arguing that it gives the "commercial impression" that a "separate certifying party is certifying different goods from different sources." Pl. Opp. at 18. As the use of the UP mark does not misrepresent the source of the goods, relief under §1064(3) is unavailable.

## C. Unfair Competition

NAOOA alleges that Defendants' false and misleading statements constitute common law unfair competition in violation of New York law. It claims that the misrepresentations mislead purchasers and the public to believe, *inter alia,* that NAOOA "is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil." Compl. ¶57.

New York courts recognize two theories of unfair competition: palming off and misappropriation. *ITC Ltd. v. Punchgini, Inc.,* 9 N.Y.3d 467, 476, 880 N.E.2d 852, 850 N.Y.S.2d 366 (2007). Palming off is "the sale of the goods of one manufacturer as those of another." *Id.* Misappropriation encompasses "[t]he principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor," *id.* (internal quotation marks and citation omitted), and "usually concerns the taking and use of the plaintiff's property to compete

against the plaintiff's own use of the same property." *Roy Export Co. v. Columbia Broad. Sys.,* 672 F.2d 1095, 1105 (2d Cir. 1982). The complaint does not state a clear claim for relief under either theory, and NAOOA's opposition papers offer no clarity, simply stating that "New York's Unfair Competition laws mirror the federal Lanham Act. Thus, for the reasons set forth above, Plaintiff's state law unfair competition claims are properly pled and should be allowed to proceed." Pl. Opp. at 18.

Reviewing the complaint, there are clearly no allegations that suggest a palming off theory or that Defendants have misappropriated NAOOA's property. A misappropriation theory may also apply, under certain circumstances, to a business's goodwill. "[W]hen a business, through renown in New York, possesses goodwill constituting property or a commercial advantage in this state, that good will is protected from misappropriation under New York unfair competition law." *ITC Ltd.,* 9 N.Y.3d at 479. To the extent the complaint suggests a claim for misappropriation of NAOOA's goodwill, it fails. Plaintiff does not allege that it enjoyed specific renown in New York, or that it possessed goodwill that Defendants misappropriated. Instead, NAOOA alleges that the Defendants' misrepresentations were made with the intent of maligning NAOOA's reputation. As the allegations fail to state a claim for unfair competition under New York law, Defendants' motion to dismiss this claim is granted.

## D. NY GBL §§349 and 350[9]

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §349. GBL

---

[9] The Court analyzes the sufficiency of the complaint under the pleading standard of Rule 8(a) rather than Rule 9(b). *See Leonard v. Abbott Laboratories, Inc.,* No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 12, 2012) (noting that GBL claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme', are not subject to the heightened pleading requirement of Rule 9(b)").

§350 bars "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §350. Under these sections, "a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chemical Bank,* 95 N.Y.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000)); *see also Cohen v. Caspar Sleep Inc.,* No. 17CV9325, 2018 WL 3392877, at *7 (S.D.N.Y. July 12, 2018) (noting that sections 349 and 350 "share the same elements"). Deceptive acts and practices are viewed objectively and are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

An allegation of a defendant's act of deception is not sufficient by itself to state a claim. The alleged act "must have a broader impact on consumers at large" and must "threaten the public interest, such as potential danger to public health or safety." *Fischer v. Forrest,* No. 14 CIV. 1304, 2015 WL 195822, at *13 (S.D.N.Y. Jan. 13, 2015) (internal quotation marks and citations omitted); *see also Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir. 1995) (the critical question "is whether the matter affects the public interest in New York"). Thus, the complaint "must allege facts demonstrating that 'the disputed conduct had a broad impact on consumers at large and not just on the plaintiff." *Bell v. Deutsche Bank,* No. 18CV01593, 2019 WL 4917901, at *7 (E.D.N.Y. Sept. 30, 2019) (internal quotation marks and citation omitted). "Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL §349 claim must be dismissed." *Miller v. HSBC Bank U.S.A., N.A.,* No. 13 CIV.

7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015).  Here, NAOOA has failed to adequately allege that conduct or advertising by Defendants was "consumer-oriented" within the meaning of the statutes.

NAOOA repeats the same generalized allegations of harm to the consuming public regarding consumer confusion about the quality of olive oils sold in supermarkets and the lack of health benefits from those products.  In addition to being vague and nonspecific, those allegations affect NAOOA's members, not NAOOA itself.  As to any impact on NAOOA itself, the complaint alleges that consumers are misled into believing "that NAOOA is not a reputable and reliable trade association and fails to uphold quality and purity standards for olive oil." Compl. ¶65.   NAOOA has not articulated how this conduct results in any injury to consumers or to the public interest.

Furthermore, statements that are opinion or puffery do not form the basis for an action under these sections.  *See, e.g., In re Scotts EZ Seed Litig.,* No. 12 CV 4727, 2013 WL 2303727, at *11 (E.D.N.Y. 2013) (dismissing claims under §§ 349 and 350 as "based on nonactionable puffery"); *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) ("[p]uffery is not actionable under sections 349 and 350 for much the same reasons that it is not illegal under the Lanham Act").  "If an alleged misrepresentation would not deceive a reasonable person because it is vague or amounts to mere puffery or opinion, then a claim under the consumer protection statutes *may* be dismissed, as a matter of law, on a motion to dismiss." *Leonard*, 2012 WL 764199, at *21 (emphasis in original).  As discussed above, no reasonable consumer would be deceived by Defendants' vague statements and thus dismissal is warranted on this basis as well.

**E. Product Disparagement/Trade Libel and Defamation/Slander**

Under New York law, defamation and disparagement in the commercial context are two distinct claims. *See Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 670, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981). Plaintiff asserts claims for both, utilizing alternative labels in two counts of the complaint. Count IV is entitled "Product Disparagement/Trade Libel," and Count V is labeled "Defamation/Slander."

1.  Defamation/Slander

To state a claim for defamation under New York law, a plaintiff must establish "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.,* 940 F.3d 804, 809 (2d Cir. 2019). In the commercial context, "false statements attacking the integrity or credit of a business constitute slander per se." *Fashion Boutique,* 314 F.3d at 59 (2d Cir. 2002) (citing *Ruder,* 52 N.Y.2d at 670 ("[w]here a statement impugns the basic integrity . . . of a business, an action for defamation lies and injury is conclusively presumed").

"The 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 399-400 (2d Cir. 2006). Thus the first element inquiries "should ordinarily be resolved at the pleading stage." *Church of Scientology Int'l v. Behar,* 238 F.3d 168, 173 (2d Cir. 2001). "[T]o withstand a motion to dismiss, a plaintiff must 'advance[] colorable claims of having been identified and described by the defamatory comment.'" *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,* No. 06-

cv-1260, 2009 WL 4547792, at *12 (E.D.N.Y. Dec, 1, 2009) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir. 1980)).

It is clear that none of the statements expressly refer to NAOOA and thus its claim cannot survive the first requirement that the statement be "of and concerning" NAOOA.  Most of the alleged statements concern the quality of unspecified brands of supermarket olive oils.  The lone statement that could be seen to impact NAOOA is the Crushed Olive statement's reference to "numerous trade associations," which, according to NAOOA, could only be referring to it, given that it is the largest trade association.  While reference to the defamed party "may be indirect and may be shown by extrinsic facts, the burden on the plaintiff[] is not a light one," and under those circumstances, "the party alleging defamation must show that it is reasonable to conclude that the publication refers to [it] and the extrinsic facts upon which that conclusion is based were known to those who read or heard the publication."  *Gristede's Foods,* 2009 WL 4547792, at *13 (internal quotation marks and citation omitted).  Here, the allegation is too vague and nonspecific to plausibly allege that the average consumer/reader is aware of any olive oil trade association, or that he or she would necessarily conclude that the reference was to NAOOA specifically.  NAOOA itself only alleges that it is the "largest" trade association, and that its members comprise approximately 55-60% of olive oil sales in the United States.  The allegation that NAOOA is the largest trade association implies that there are others and thus the statement could just as easily apply to one or more trade associations representing the remaining 35-40% of sales.  As the complaint provides no basis for concluding that the statements attributed to Defendants were of and concerning NAOOA, the motions to dismiss this claim are granted.

2. Trade Libel/Product Disparagement

Trade libel, also known as product disparagement, is the "disparagement of a business's goods or services" and "does not protect the reputation of the business as such." *Van-Go Transp. Co. v. New York City Bd. of Educ.,* 971 F. Supp. 90, 98 (E.D.N.Y. 1997).   "Where, however, the statement is confined to denigrating the quality of the business' goods or services, it could support an action for disparagement, but will do so only if malice and special damages are proven." *Ruder,* 52 N.Y.2d at 670-71; *see also Fashion Boutique,* 314 F.3d at 59 ("the plaintiff must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages").

The complaint again fails to adequately allege that any of the statements made by Defendants were directed at NAOOA.  In addition, New York law requires that special damages be pleaded.  Special damages are defined as "the loss of something having economic or pecuniary value and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Jin Yung Chung v. Sano,* No. 10-CV-2301, 2011 WL 1298891, at *6 (E.D.N.Y. Mar. 31, 2011) (internal quotation marks and citation omitted).  "In pleading special damages, actual losses must be identified and causally related to the alleged tortious act." *Sandler v. Simoes,* 609 F. Supp. 2d 293, 303 (E.D.N.Y. 2009) (quoting *Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.,* 136 A.D.2d , 633, 633, 523 N.Y.S.2d 875 (2d Dep't 1988)).  "[G]eneral allegations of lost sales from unidentified customers are insufficient" and "[r]ound figures or a general allegation of a dollar amount . . . will not suffice." *Dentsply Int'l Inc. v. Dental Brands for Less LLC,* No. 15 Civ. 8775, 2016 WL 6310777, at *6 (S.D.N.Y. Oct. 27, 2016) (internal quotation marks and citations omitted).

The complaint does not contain any allegations regarding NAOOA's damages, much less allegations with the specificity required to withstand a motion to dismiss.  In its opposition papers, NAOOA does not address the absence of allegations regarding special damages but summarily states that "[d]iscovery will further show special damages through money spent on corrective advertising."  Pl. Opp. at 25.  Plaintiff further argues that Judge Spatt, in finding that NAOOA had individual standing, concluded that damages had been adequately alleged.  Plaintiff overstates the prior ruling in this regard.  The motion under consideration at that time sought dismissal pursuant to Rule 12(b)(1) and as such, Judge Spatt considered information regarding damages that was contained in affidavits.  *See generally Chamaidan v. Tomy B. Haircare Inc.,* No. , 2019 WL 4917895, at *6 (E.D.N.Y. Sept. 30, 2019) (on a Rule 12(b)(1) challenge to plaintiff's standing, the Court "can consider affidavits from the parties and is not restricted to considering the factual allegations in the complaint").   The current analysis is taken under Rule 12(b)(6) and thus is limited to the well-pled allegations of the complaint, which does not contain any allegations of damages, and other materials discussed above.

## F.  Claims Against Nonmoving Party

Defendant D'Avolio has not moved to dismiss the complaint, however, "[a] district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."  *Whitfield v. O'Connell,* No. 09 Civ. 1925, 2010 WL 1010060, at *7 n.4 (S.D.N.Y. Mar. 18, 2010), *aff'd,* 402 F. App'x 563 (2d Cir. 2010).  Here, NAOOA has addressed its claims against D'Avolio throughout its papers.  It referenced its allegations regarding D'Avolio as part and parcel of the arguments raised in its opposition.  *See* Pl. Opp. at 6 (false advertising and product disparagement); *id.*at 7 (statements are literally and impliedly false); *id.*at 9 (targeted and

concerted effort to attack NAOOA); *id.* at 14 (commercial speech); *id.* at 21 (false and

misleading supporting defamation claim); *id.* at 24 (trade libel); *id.* at 25 (joint liability).  In

addition, the Court's rulings regarding the lack of support for a claim that all Defendants acted in

concert and pertaining to use of the UP mark, apply equally to the claims against all the Retail

Defendants, including D'Avolio.  As NAOOA has had a fair opportunity to be heard on the

issues, the claims against D'Avolio are also dismissed.

### G.  Leave to Amend.

Leave to amend a complaint "should be freely given when justice so requires," FED. R.

CIV. P. 15(a)(2), but whether to grant or deny leave to amend lies in the sound discretion of the

court.  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). Defendants

argue that the complaint should be dismissed with prejudice.  *See* Crushed Olive Memorandum

at 20.  In its response, Plaintiff includes a request for leave to amend which reads in its entirety

as follows:  "Plaintiff submits that the Complaint should be allowed to proceed as pled.  If the

Court finds otherwise, Plaintiff respectfully requests the opportunity to amend the complaint at

this early stage in the proceedings"  Pl. Opp. at 25.  NAOOA's request is both untimely and

deficient.

Defendants have made, in total, four (4) motions to dismiss detailing the complaint's

deficiencies.  NAOOA could have amended as of right, *see* FED. R. CIV. P. 15 (a)(1)(B), it could

have attempted to amend with Defendants' consent, or it could have moved or cross-moved to

amend.  Thus, Plaintiff was made aware of the defects in the complaint, had numerous

opportunities to address them, and failed to utilize those opportunities.  *Brown v. Cerberus*

*Capital Mgmt., L.P.,* 703 F. App'x 11, 15 (2d Cir. 2017) (summary order) (no abuse of discretion

in denying leave to amend where plaintiffs "enjoyed a full opportunity to amend, having been

apprised of Defendants' views of the original complaint's shortcomings").  Instead of taking any of these actions, NAOOA opted to wait for a decision from this Court so that it could then attempt to tailor an amended pleading.  However, a plaintiff is "not entitled to an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *In re Eaton Vance Mut. Funds Fee Litig.,* 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005) (internal quotation marks and citation omitted), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110 (2d Cir. 2007).

NAOOA's *pro forma* request is also substantively deficient in that it fails to provide any proposed additional facts that would raise its claims from implausible to plausible.  *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 188 (2d Cir. 2014) (denial of leave to amend appropriate where "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend"); *In re Goldman Sachs Mortgage Serv'g S'holder Derivative Litig.,* 11-civ-4544, 2012 WL 3293506, at *11 (S.D.N.Y. 2012) (denying leave to amend where plaintiffs failed to articulate how an amendment would cure pleading defects).  Moreover, NAOOA has failed to submit a proposed amended complaint including any proposed factual enhancements. *Ackermann v. N.Y. City Dep't of Info.Tech. & Telecommc'ns,* No. 09-CV-2436, 2010 WL 1172625 at *1 (E.D.N.Y. Mar. 24, 2010) ("Any motion to amend must attach the proposed amended complaint specifying the new claims.").  This failure provides an additional basis to deny it leave to amend.  *See Schwasnick v. Fields,* No. 08-civ-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) (the court may "deny leave to amend where the Plaintiff[] fails to submit a proposed pleading and does not explain why"); *LaBarbera v. Ferran Enters., Inc.* No.

05-civ-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("Denial of the motion to amend is also warranted by Plaintiffs' unexplained failure to submit a proposed pleading").

In light of Plaintiff's failure to amend, or move to amend, previously despite numerous opportunities to do so, its failure to provide a proposed amended complaint, and its failure to articulate in any manner how amendment would cure the pleading defects, leave to amend is denied.

## IV.  CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss [64], [65] pursuant to Rule 12(b)(6) are granted, and the case is dismissed.  The Clerk of the Court is directed to close the case.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
        April 30, 2020